# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 10, 2014

LETTER TO COUNSEL

> RE:   *Richard E. Stitely v. Commissioner, Social Security Administration*;
>        Civil No. SAG-14-144

Dear Counsel:

On January 17, 2014, Plaintiff Richard Stitely petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 14, 17, 18). I find that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion and grant the Commissioner's motion. This letter explains my rationale.

Mr. Stitely filed a claim for Disability Insurance Benefits ("DIB") on September 20, 2010. (Tr. 96). He protectively filed a claim for Supplemental Security Income ("SSI") on August 30, 2010. (Tr. 355). He alleged a disability onset date of March 1, 2008 for both claims. (Tr. 96–99, 355). Both claims were denied initially, and his DIB claim was denied on reconsideration. (Tr. 25–35, 37–49, 356–366). His SSI claim was not considered at the reconsideration level, but it was escalated to the hearing level due to common issues with his DIB claim. (Tr. 14, 60). A hearing was held on June 14, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 373–405). Following the hearing, the ALJ determined that Mr. Stitely was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11–24). The Appeals Council denied Mr. Stitely's request for review, (Tr. 5–7), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Stitely suffered from the severe impairments of asthma, chronic obstructive pulmonary disease, degenerative osteoarthritis of the bilateral knees, and degenerative disc disease of the lumbar spine. (Tr. 16). Despite these impairments, the ALJ determined that Mr. Stitely retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and walk for only two hours total in an eight-hour workday. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs and crawl. He is able to frequently balance, stoop, kneel, and crouch. He

*Richard Stitely v. Commissioner, Social Security Administration*
Civil No. SAG-14-144
November 10, 2014
Page 2

> must avoid concentrated exposure to extreme cold, wetness, and hazards and must
> avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.
> He will be off task approximately ten percent of the workday.

(Tr. 19).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that
Mr. Stitely could perform jobs existing in significant numbers in the national economy and that
therefore he was not disabled.  (Tr. 23–24).

Mr. Stitely raises fourteen arguments on appeal.  He claims: (1) that the ALJ should have
determined that he would be off task for twenty percent of the day, rather than ten percent, and
that the ALJ should have concluded he was limited to sedentary, rather than light work; (2) that
the ALJ erred in determining that his right hand impairments are not severe; (3) that the ALJ
failed to address whether his non-severe impairments impacted his RFC; (4) that the consultative
examination of his treating physician was inadequate and should not have been considered; (5)
that the ALJ erred in ordering a consultative examination from a non-treating physician; (6) that
the ALJ failed to provide a rationale for why Mr. Stitely's hand and arm impairments are not
severe; (7) that the ALJ completely failed to discuss several of his medically determinable
impairments; (8) that the ALJ erred in determining that his obesity is not severe; (9) that the ALJ
failed to obtain the treatment records from his treating pulmonologist and rheumatologist; (10)
that the ALJ's explanation regarding Mr. Stitely's RFC was inadequate; (11) that the ALJ
erroneously applied legal standard in assessing his credibility; (12) that the ALJ failed to
consider material evidence in assessing his credibility; (13) that the ALJ failed to consider
several required factors in assessing his credibility; and (14) that the ALJ erred in failing to
consider the fact that he was unable to afford medical treatment.  After careful consideration, I
find that each of Mr. Stitely's arguments is without merit.  Because many of Mr. Stitely's
arguments overlap, I have combined their analysis where appropriate.

Mr. Stitely first claims that the ALJ's conclusion that he would be off task 10% of the
workday was not supported by substantial evidence, and that the ALJ should have instead
determined that he would be off task 20% of the workday.  Pl.'s Mem. 7–9.  Specifically, Mr.
Stitely argues that the ALJ failed to take into account the time he would be off task due to his
frequent use of nebulizer treatments.  Pl.'s Mem. 8.  Mr. Stitely claims that he uses a nebulizer 4
to 10 times per day, for 10 to 15 minutes per treatment.  *Id.*  However, the treatment notes and
testimony to which Mr. Stitely cites do not support the frequency with which he claims to use
nebulizer treatments.  *See* (Tr. 146 (4 times daily), 153 (4 times daily), 186 (no frequency
specified), 240 (every 4 to 6 hours), 241 (no frequency specified), 394–95 (6 times daily)).
Rather, the record indicates that Mr. Stitely requires a nebulizer treatment, at most, once every 4
hours, which, at 10 to 15 minutes each, would occupy 20 to 30 minutes (approximately 4% to
6%) of an 8 hour work day.  Moreover, the ALJ specifically stated in the hypothetical that Mr.
Stitely would be off task 10 percent of the day "because of his symptoms, particularly the ones
related to his shortness of breath and coughing."  Presumably, Mr. Stitely's use of nebulizer
treatments is one of those symptoms.  Thus, Mr. Stitely's argument that the ALJ failed to take
into account the time he would need to be off task due to those treatments is unpersuasive, as is
his argument that they would occupy 20% of his work day.  Mr. Stitely also claims that the ALJ

failed to take into account his frequent absenteeism due to doctor's appointments.  Pl.'s Mem. 8.  However, Mr. Stitely points to no evidence on the record indicating how often he would need to miss work for doctor's appointments.  Because Mr. Stitely bore the burden of proof regarding his functional limitations, it was not error for the ALJ to fail to speculate as to limitations for which Mr. Stitely offered no evidence.  I thus find that the ALJ's determination that Mr. Stitely would be off task 10 percent of the workday was supported by substantial evidence.

Mr. Stitely also repeatedly contends that because the jobs the VE testified Mr. Stitely was capable of performing were all sedentary jobs, he is accordingly limited to only sedentary work.  Pl.'s Mem. 7–8, 29; Pl.'s Reply Mem. 4–5.  He claims that the ALJ's conclusion at Step Five that he could perform jobs existing in significant numbers in the national economy was therefore not supported by substantial evidence.  *Id.*  Mr. Stitely's argument is without merit.  A VE's testimony provides examples of jobs in the national economy a claimant is capable of performing, which allows an ALJ to determine whether a claimant is disabled.  The jobs identified by the VE are not necessarily the only jobs a claimant is capable of performing.  Importantly, if a claimant can perform light work, pursuant to Social Security regulations, the claimant is also generally capable of performing sedentary work.  20 C.F.R. §§ 404.1567(b), 416.967(b).  The conclusion that Mr. Stitely is not capable of performing light work thus does not follow from the fact that the VE identified only sedentary jobs in response to the ALJ's hypothetical.  Mr. Stitely has not identified any evidence undermining the ALJ's conclusion that he is capable of the exertional requirements of a limited range of light work.

Mr. Stitely's second, third, sixth, and eighth arguments raise similar claims pertaining to the ALJ's evaluation of his hand, arm, and obesity impairments.  Mr. Stitely raises two separate, repetitive arguments that the ALJ should have determined that his hand and arm impairments were severe at Step Two.  Pl.'s Mot. 9–12, 20–23.  Step Two of the disability evaluation process is a threshold determination of whether a claimant is suffering from a severe impairment or combination of impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (upholding the severity threshold because, "if a claimant is unable to show that he has a medically severe impairment . . . there is no reason for the Secretary to consider the claimant's age, education, and work experience").  If a claimant is not suffering from a "severe medically determinable physical or mental impairment that meets the durational requirement," he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Thus, in order for an impairment to satisfy Step Two, it must: (1) be severe—cause a significant limitation to the claimant's ability to do basic work activities, (2) be medically determinable, and (3) meet the durational requirement—have lasted or be expected to last for 12 months.  *See id.* §§ 404.1521, 416.921, 404.1509, 416.909.

Mr. Stitely contends that the ALJ's explanation for why his hand and arm impairments were non-severe was "conclusory."  However, Mr. Stitely does not point to any evidence on the record indicating that Mr. Stitely's alleged hand and arm impairments caused any limitation in his ability to do work activities.  Moreover, the ALJ indicated that he had reviewed the medical evidence and considered Mr. Stitely's complaints, but he noted that Mr. Stitely's symptoms were intermittent and that he exhibited good shoulder and elbow range of motion.  (Tr. 17).  It is arguably unclear whether the ALJ concluded Mr. Stitely's hand and arm impairments did not

satisfy Step Two because (1) they were not severe, (2) did not meet the durational requirement, or (3) both. (Tr. 17). Mr. Stitely contends that the ALJ thus improperly combined "three separate required findings into one." Pl.'s Mem. 10, 24. However, Mr. Stitely misunderstands the requirements of Step Two. An impairment can fail to satisfy Step Two because it does not satisfy any one—or a combination—of its requirements. Even if the ALJ's Step Two analysis of Mr. Stitely's hand and arm impairments was unclear, in light of the fact that Mr. Stitely has not identified any evidence on the record indicating that his hand and arm impairments satisfied the severity requirement or the duration requirement, the ambiguity cannot be resolved in his favor. Accordingly, I find the ALJ's conclusion that Mr. Stitely's hand and arm impairments did not meet the requirements of Step Two was supported by substantial evidence, and that, in the alternative, any error is harmless.

Mr. Stitely also claims that the ALJ erred in finding his obesity to be non-severe at Step Two. Pl.'s Mot. 24–26. Social Security Regulation 02–1p[1] explains that

> [o]besity is a severe impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities . . . [t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment. Neither do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a severe impairment for disability program purposes. Rather [the agency] will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02–1p, 2002 WL 34686281, at *4 (September 12, 2002). Mr. Stitely contends that because his pain medication increased as his weight increased, the ALJ should have determined that his obesity significantly limited his ability to do basic work activities. However, Mr. Stitely points to no evidence—nor do I find any—indicating that the increase in his pain medication was causally related to his weight gain or that his weight gain impacted his ability to do basic work activities. The ALJ "considered the potential effects obesity has in causing or contributing to impairments in other body systems" before concluding that "the medical evidence does not reflect obesity having more than a minimal effect on [Mr. Stitely's] ability to perform work related activities for a continuous period lasting, or expected to last, at least 12 months." (Tr. 17–18). Although Mr. Stitely is correct that his obesity impairment itself lasted for more than 12 months, he points to no evidence indicating that it resulted in functional limitations that lasted for more than 12 months.[2] Accordingly, I find the ALJ's conclusion that Mr. Stitely's obesity

---

[1] Although Social Security Rulings do not carry the "force and effect of the law or regulations," *see Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984), they are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

[2] Mr. Stitely argues that the ALJ's statement regarding his obesity also impermissibly "combined three separate findings" into one. Pl.'s Mem. 24. However, once again, any ambiguity is not resolved in his favor, since the ALJ could have permissibly based his conclusion on Mr. Stitely's failure to satisfy the severity requirement, his failure to satisfy the durational requirement, or both. Accordingly, his argument is unpersuasive.

impairment did not meet either the severity requirement or the durational requirement of Step Two was supported by substantial evidence.

Notably, if a claimant is found to be suffering from a severe medically determinable impairment that meets the durational requirement, the analysis simply proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Because the ALJ determined that Mr. Stitely suffered from other impairments that satisfied the Step Two criteria, any error in his evaluation of Mr. Stitely's hand, arm, and obesity impairments at Step Two was harmless. Mr. Stitely contends that the Step Two errors he alleges were not harmless because the ALJ failed to consider Mr. Stitely's non-severe impairments in assessing his RFC. Specifically, he contends that "no consideration was given to the limitations that normally flow from carpal tunnel syndrome, other neuropathies of the forearm, and obesity." Pl's Mot. 13. Although an ALJ is required to discuss non-severe medically determinable impairments in his RFC, regulations also make clear that a claimant's RFC is assessed based on all of the evidence in the case record. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Notably, Mr. Stitely does not point to any evidence in the record indicating that he suffered from limitations that "normally flow" from his non-severe impairments. The ALJ did not err by failing to discuss limitations that the record did not support.

Mr. Stitely's fourth, fifth, and twelfth arguments fault the ALJ's consideration of the consultative examination evidence. First, Mr. Stitely contends that the ALJ should have obtained a complete consultative examination, as opposed to the pulmonary function test that was ordered, from Dr. Allencherry, his treating physician. Pl.'s Mem. 13–16. He claims that the "Green Book"—a Social Security Administration publication that provides guidance on consultative examinations for health professionals—specifically requires a complete examination from a consultative examiner. Pl.'s Mem. 14. Mr. Stitely's argument is without merit. He cites no authority supporting his contention that the standards in the Green Book govern the admissibility of evidence supporting a disability determination.[3] The Green Book is not a regulation, and it is not legally binding on the agency or this Court. *See, e.g., Schweiker v. Hansen*, 450 U.S. 785, 789 (1980) (explaining that the Social Security Claims Manual "is not a legal regulation. It has no legal force, and it does not bind the SSA."). Rather, Social Security regulations governing consultative examinations state that the agency "will purchase only the specific examinations and tests [it] need[s] to make a determination . . . [it] will not authorize a comprehensive medical examination when the only evidence [it] need[s] is a special test." The agency did not err in ordering only the particular test it deemed necessary. Moreover, it was within the discretion of the ALJ to determine that the record was sufficient to support a determination as to Mr. Stitely's

---

[3] In his Reply to the Commissioner's Motion for Summary Judgment, Mr. Stitely contends that the Green Book has been incorporated into Social Security regulations and that it was promulgated under the notice-and-comment rulemaking provisions of the Administrative Procedure Act, 5 U.S.C. §553. Pl.'s Reply Mem. 8–9. The pages of the Federal Register to which he cites in support of this contention, however, do not mention the Green Book. *See* 56 Fed. Reg. 36932 (August 1, 1991), 65 Fed. Reg. 11866–02 (March 7, 2000). Rather, they refer to "regulations to establish standards for consultative examinations," and subsequent revisions to those regulations, which are found at 20 C.F.R. §§ 404.1519f–404.1519q and 416.919f–416.919q. The regulations do not mention the Green Book, and do not imply that it governs the disability determinations of the agency or the evidence that an ALJ may consider.

*Richard Stitely v. Commissioner, Social Security Administration*
Civil No. SAG-14-144
November 10, 2014
Page 6

claims without a complete consultative examination. *See Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003); *Kellihan v. Shalala*, 30 F.3d 129 (4th Cir. 1994) (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986)).

Mr. Stitely also argues that the ALJ should not have considered the consultative examination of Dr. Waseem because (1) Dr. Waseem was not his treating physician and (2) Dr. Waseem's examination departed from the standards set forth in the Green Book. Pl.'s Mem. 16–20. First, choosing a physician to perform a consultative examination is a discretionary function of the agency. The agency may choose a claimant's own physician or another source. 20 C.F.R. §§ 404.1519g, 416.919g. The regulations indicate preference for a claimant's treating physician if, in the agency's judgment, the treating physician is "qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment. *Id.* §§ 404.1519h, 416.919h. However, the record indicates that Mr. Stitely's treating source would not accept the state approved vendor fee. (Tr. 41). Accordingly, the agency did not err in failing to obtain a consultative examination from Mr. Stitely's treating physician, and it was well within the agency's authority to choose Dr. Waseem to perform the examination.

Mr. Stitely's repeated claims that Dr. Waseem's report was "inadmissible" for failure to comply with the Green Book are likewise meritless. Pl.'s Mem. 19–20, 26, 36, 38. Once again, Mr. Stitely cites no authority supporting his contention that the standards in the Green Book govern the evidence an ALJ may consider in making a disability determination. Rather, the regulations state that reports from consultative examiners need only be "complete enough to help [the agency] determine the nature, severity, and duration of the impairment, and residual functional capacity." 20 C.F.R. §§ 404.1519n, 416.1519n. Moreover, Social Security Regulations plainly require an ALJ to consider all evidence in a claimant's case record. *Id.* §§ 404.1250(a)(3), 416.920(a)(3). It thus would have been error for the ALJ not to consider Dr. Waseem's consultative examination simply because it did not adhere strictly to the standards set forth in the Green Book. The consultative examination of Dr. Waseem was plainly relevant to the severity of Mr. Stitely's impairments and to the assessment of his RFC.[4]

Seventh, Mr. Stitely contends that the ALJ completely failed to consider eight impairments from which he allegedly suffers. Pl.'s Mem. 23–24. However, when Mr. Stitely has been asked to name the impairments that prevent him from working, he never has included the impairments he now contends the ALJ should have considered. *See, e.g.,* (Tr. 25, 153, 180, 377–78, 383–84). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. 42 U.S.C. § 423(d)(1)(A). The ALJ need not consider an impairment if a claimant does not contend it contributes to his inability to work. Moreover, contrary to Mr. Stitely's argument, the ALJ

---

[4] Notably, despite ample opportunity to do so, prior to this appeal, Mr. Stitely did not object to Dr. Waseem's examination or the ALJ's consideration of Dr. Waseem's report. 20 C.F.R. §§ 404.1519j and 416.919j provide that a claimant or his representative may object to the claimant being examined by a medical source the agency has designated to perform a consultative examination. Mr. Stitely made no such objection. At the hearing before the ALJ, Mr. Stitely's counsel testified that he had had an opportunity to review the file and that he had no objections to the relevancy of any of the documents. (Tr. 375–76).

mentioned several of the alleged impairments.  (Tr. 17) (noting hallux rigidus, elbow pain, and gastroesophageal issues).  The ALJ's opinion indicates that he thoroughly reviewed the record in assessing Mr. Stitely's functional limitations.  As the Fourth Circuit recently explained, although the Commissioner's decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based," 42 U.S.C. § 405(b)(2),  "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."  *Reid v. Commissioner of Social Security*, No. 13–1480, 2014 WL 4555249, at *3 (4th Cir. Sept. 16, 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)).  Finally, Mr. Stitely does not contend that any of the impairments the ALJ failed to consider would have changed the outcome of his disability claim.  Accordingly, he has suffered no prejudice as a result of any error by the ALJ to discuss them more thoroughly.   As such, I conclude that the ALJ's decision regarding these alleged impairments was based on a thorough review of the record and was supported by substantial evidence.

Mr. Stitely's ninth argument faults the ALJ for inadequately developing the record.  Pl.'s Mem. 28–29.  Specifically, he claims that the agency should have obtained additional treatment records from Dr. Allencherry, his treating pulmonologist, Dr. Howell, his treating rheumatologist, and Dr. Parker.  Pl.'s Mem. 27.  He contends that the failure to obtain these records was in error because, in their absence, the medical file was inadequate to make a disability determination and because the records were critical to the analysis of his credibility.  This argument ignores the fact that at steps one through four of the disability evaluation, Mr. Stitely bears the burden of producing evidence that he is disabled.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 42 U.S.C. 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a).   Although the agency will "make every reasonable effort to help [a claimant] get medical reports from [his] own medical sources," at no point did Mr. Stitely inform the agency that he was experiencing difficulty obtaining those records.  Moreover, the agency met its obligation with respect to the medical records Mr. Stitely reported, which appear in the file.  (Tr. 165–66, 189–90, 215–267, 312–50).  Moreover, these records include treatment notes from the Community Free Clinic, where Dr. Allencherry and Dr. Parker were employed. (Tr. 189–90).  Accordingly, Mr. Stitely's claim that the agency failed to obtain treatment records from Dr. Allencherry and Dr. Parker is without merit.

Dr. Howell, Mr. Stitely's claimed rheumatologist, is mentioned twice in the entirety of the record.  The first is a treatment note that simply states "RA—sign joint pain, Dr. Howell." (Tr. 313).  The second is a progress note that refers to a future appointment scheduled with Dr. Howell.  (Tr. 315).  Notably, however, Mr. Stitely never reported receiving treatment from Dr. Howell, and there are no treatment notes from Dr. Howell on the record.  *See, e.g.*, (Tr. 165–67, 189–92).  Nor does Mr. Stitely now contend that Dr. Howell's treatment notes would have changed the outcome of his disability claim.  The ALJ did not err by failing to obtain the notes of a physician Mr. Stitely did not list as a treating physician, who was mentioned twice in ambiguous treatment notes.  Moreover, any failure to obtain any treatment notes did not prejudice Mr. Stitely.  In order to supplement the notes of Mr. Stitely's treating physicians, and to ensure that its determination had adequate evidentiary support, the agency ordered two

*Richard Stitely v. Commissioner, Social Security Administration*
Civil No. SAG-14-144
November 10, 2014
Page 8

consultative examinations.   (Tr. 201–03, 205–13).   Accordingly, I find that the ALJ had sufficient evidence to make a disability determination.

Tenth, Mr. Stitely argues that the ALJ failed to provide substantial evidence supporting almost all of the functional limitations identified in his RFC assessment.  Pl.'s Mem. 29–31. Specifically, he claims that the ALJ offered no basis for his conclusion that he can carry up to 20 pounds occasionally, and 10 pounds frequently.  *Id.*  However, both State agency medical experts opined that Mr. Stitely was capable of performing light exertional work, which is defined as the ability to carry up to 20 pounds occasionally, and 10 pounds frequently.  (Tr. 29–31, 44–46). The ALJ assigned these opinions "significant weight" to the extent that they were consistent with his RFC analysis.  Accordingly, contrary to Mr. Stitely's argument, the ALJ offered specific evidence supporting his conclusion that Mr. Stitely was capable of the exertional demands of light work.  Mr. Stitely also takes issue with the ALJ's conclusion regarding almost all of his functional limitations.  However he points to no evidence on the record indicating that he is not capable of these activities.  The ALJ thoroughly evaluated the medical evidence of record before concluding that Mr. Stitely's RFC was largely consistent with, if not slightly more limited than, the RFC assessment reached by the State agency physicians.  The ALJ's RFC assessment was supported by substantial evidence.

Mr. Stitely's eleventh, twelfth, thirteenth, and fourteenth arguments fault the ALJ's credibility analysis.   The Fourth Circuit has developed a two-part test for evaluating the credibility of a claimant's subjective complaints.  *Craig*, 76 F.3d at 594.  First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant.  *Id.*  After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work."  *Id.* at 595.

First, Mr. Stitely claims that because his impairments are capable of causing the symptoms he alleges he suffers, the ALJ erred by stating that Mr. Stitely's "medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms."  Pl.'s Mem. 31–33 (citing (Tr. 20)).  Moreover, Mr. Stitely contends that the ALJ failed to explain which of his alleged symptoms his impairments could not reasonably be expected to cause.  Pl.'s Mem. 31–32.  However, the ALJ provided that analysis subsequently in the opinion, when reciting the treatment records, medical findings, and activities of daily living contradicting Mr. Stitely's assertions.  Accordingly, the ALJ did not err in evaluating whether Mr. Stitely's impairments could reasonably be expected to cause his symptoms.

Mr. Stitely also argues that the ALJ's opinion misconstrues his testimony regarding his daily living activities, specifically, his ability to drive a car, drive a motorcycle, and fish.  Pl.'s Mem. 33–35.  Mr. Stitely testified that he has not been able to fish since 2010.  (Tr. 385–86). Thus, contrary to Mr. Stitely's allegation, the ALJ's statement that Mr. Stitely testified that he

could fish subsequent to his alleged disability onset date was accurate.  (Tr. 21).[5]  Mr. Stitely acknowledges that his testimony indicates he was able to fish after his alleged disability onset date, however, he claims that the ALJ failed to consider whether he became disabled at any point after his alleged disability onset date.  Pl.'s Mem. 34–35.  Notably, Mr. Stitely points to no evidence indicating that the ALJ failed to consider whether he became disabled at a later date, and the ALJ's line of questioning at the hearing indicates that he considered whether Mr. Stitely's symptoms were worsening over time.   (Tr. 386–89).   Moreover, the ALJ's determination focused on Mr. Stitely's daily living activities in their entirety and did not hinge on his ability to fish.  (Tr. 21).  As I am precluded from reweighing the evidence, *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), I find that the ALJ provided substantial evidence supporting his credibility analysis.

Mr. Stitely alleges that the ALJ failed to discuss several factors mandatory to the credibility analysis.  Pl.'s Mem. 39–41.  Social Security regulations set forth factors relevant to evaluating a claimant's symptoms, including evidence about the "type, dosage, effectiveness, and side effects of any medication" a claimant takes.  20 C.F.R. 1529(c)(3)(iv).  Once again, Mr. Stitely alleges that the ALJ did not analyze his medication, specifically his need for nebulizer treatments.  Pl.'s Mem. 39.  As discussed above, however, the functional limitations identified by the ALJ in his RFC assessment more than accommodate any impact Mr. Stitely's nebulizer treatments have on his ability to work.  Mr. Stitely claims that the ALJ failed to consider several other factors set forth in the Social Security regulations, but notably, he does not contend that the consideration of any of these factors would have impacted the ALJ's credibility analysis.  The ALJ set forth a thorough discussion of the evidence relevant to Mr. Stitely's credibility, and I find his conclusion was supported by substantial evidence.

Mr. Stitely also contends that the ALJ failed to consider several treatment notes and other evidence bearing on his credibility.  Pl.'s Mem. 35–41.  However, Mr. Stitely does not explain how the ALJ's discussion of any of the evidence would have impacted the ALJ's assessment of his credibility.  As noted above, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."  *Reid*, 2014 WL 4555249, at *3.  Specifically, Mr. Stitely takes issue with the ALJ's evaluation of his cardiac stress test, which was terminated after 7.5 minutes due to shortness of breath.  However, Mr. Stitely's ability to walk for 7.5 minutes during his stress test would not support his testimony that he could walk no more than 25 feet. *See* Pl.'s Mem. 37.  I find that the ALJ engaged in a thorough evaluation of the record and identified substantial evidence supporting his credibility assessment.

Mr. Stitely claims for the first time before this Court that the record reviewed by the ALJ was incomplete, and that the ALJ was aware that treatment records were missing.[6]  Pl.'s Mem.

---

[5] Mr. Stitely's alleged disability onset date is March 1, 2008.  Accordingly, if he was able to fish as recently as 2010, he was able to fish subsequent to his alleged disability onset.

[6] Mr. Stitely claims that the ALJ "hinted that trial counsel should obtain the necessary confirmation of blackout [sic] from Dr. Parker, shortly after counsel had informed him of Mr. Stitely's indigence."  Pl.'s Mem. 41.  However, the trial transcript, including the page Mr. Stitely referenced and those surrounding it, reveals no such "hint."  Tr. (391–393).

*Richard Stitely v. Commissioner, Social Security Administration*
Civil No. SAG-14-144
November 10, 2014
Page 10

27, 41–42.  Mr. Stitely's fourteenth argument alleges that the ALJ erroneously faulted him for having a "sparse" treatment record, without considering whether that sparseness was due to the fact that Mr. Stitely could not afford the treatment records of his specialists.  Pl.'s Mem. 41–42. First, in assessing Mr. Stitely's credibility and RFC, the ALJ did not characterize the treatment record as "sparse."  *See* (Tr. 20–21).  Rather, the ALJ stated that Mr. Stitely's impairments "have been associated with limited, conservative treatment."  *Id.*  Moreover, as stated above, at no point prior to this appeal did Mr. Stitely indicate that he had received treatment from Dr. Howell, who Mr. Stitely now claims was his treating rheumatologist.  Likewise, at no point did Mr. Stitely indicate that the medical records the agency received from the Community Free Clinic, where he was treated by Dr. Allencherry and Dr. Parker, were incomplete.  There is simply no indication that the ALJ found the record to be sparse or incomplete, or that the ALJ based his credibility and RFC assessments on any failure by Mr. Stitely to seek treatment.

For the reasons set forth herein, Mr. Stitely's Motion for Summary Judgment (ECF No. 14) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge